IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, not individually but as Administrator of the Funds, and, <br><br> FOX VALLEY LABORERS' HEALTH AND WELFARE FUND, THE FOX VALLEY LABORERS' PENSION FUND, and DEBORAH FRENCH, not individually, but as Administrator of the Fox Valley Funds, <br><br> Plaintiffs, <br> v. <br><br> S.A.L. EXPRESS, INC., also d/b/a S.A.L. TRAFFIC CONTROL, SANCO SERVICES, INC., also d/b/a SANCO TRAFFIC CONTROL, an Illinois corporation, SAMMY'S STAFFING INC., also d/b/a SAMMY'S TRUCKING & MATERIALS INC., an Illinois corporation, ROBERT SANCHES, individually, OSVALDO PICO, individually, and SAMUEL PICO, Individually, <br><br> Defendants. | Judge <br><br> Case No. 19 C 6669 |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare

Department of the Construction and General Laborers' District Council of Chicago and Vicinity,

the Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus,

Administrator of the Funds (collectively the "Chicago Funds"), Fox Valley Laborers' Health and

Welfare Fund, The Fox Valley Laborers' Pension Fund and Deborah French, not individually, but as Administrator of the Fox Valley Funds (collectively the "Fox Valley Funds")(or collectively with the Chicago Funds as the "Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, Katherine Mosenson, and Sara S. Schumann, for their Complaint against Defendants S.A.L. Express, Inc., also d/b/a/ S.A.L. Traffic Control, Sanco Services, Inc. also d/b/a Sanco Traffic Control, Sammy's Staffing, Inc. also d/b/a Sammy's Trucking & Materials Inc., Robert Sanches, individually, Osvaldo Pico, individually, and Samuel Pico, individually, state:

## THE PARTIES

1. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

2. Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Chicago Funds, and has been duly authorized by the Chicago Funds' Trustees to act on behalf of the Chicago Funds in the collection of employer contributions owed to the Chicago Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Chicago Funds of amounts which have been or are required to be withheld from the wages of employees in payment of District Council dues for transmittal to the District Council. With respect to such matters, Wenskus is a fiduciary of the Chicago Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

2

3. Plaintiff Deborah French ("French") is the Administrator of the Fox Valley Funds, and has been duly authorized by the Fox Valley Funds' Trustees to act on behalf of the Fox Valley Funds in the collection of employer contributions owed to the Fox Valley Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Fox Valley Funds of amounts which have been or are required to be withheld from the wages of employees in payment of District Council dues for transmittal to the District Council. With respect to such matters, French is a fiduciary of the Fox Valley Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

4. Defendant S.A.L. Express, Inc., also d/b/a/ S.A.L. Traffic Control (hereinafter "SAL") is an Illinois corporation. At times relevant herein SAL did business within this District and was an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c). At all times relevant, SAL operated from and had as its principal place of business at 225 Miles Parkway, Bartlett, Illinois, the principal place of business of Traffic Control & Protection, Inc.

5. Defendant Sanco Services, Inc., d/b/a Sanco Traffic Control ("Sanco") is an Illinois corporation. At times relevant Sanco did business within this District, and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c). At all times relevant, Sanco operated from and had as its principal place of business at 225 Miles Parkway, Bartlett, Illinois, the principal place of business of Traffic Control & Protection, Inc.

6. Defendant Sammy's Staffing Inc., also d/b/a Sammy's Trucking & Materials Inc. (Sammy's Staffing) was at times relevant an Illinois corporation.

7.  Defendant Robert Sanches is and was at all times relevant an officer and shareholder of Sanco.

8.  Defendant Osvaldo Pico is and was at times relevant a managing employee of SAL, a managing employee of Sanco, and, upon information and belief, an officer and shareholder of Sammy's Staffing.

9.  Defendant Samuel Pico is and was at times relevant a managing employee of SAL and a managing employee of Sanco.

10. The Construction and General Laborers' District Council ("District Council" or the "Union") is a labor organization within the meaning of 29 U.S.C. §185(a). The District Council and SAL have been parties to a collective bargaining agreement which became effective March 30, 2018 ("SAL Agreement"). (A copy of the Independent Construction Industry Collective Bargaining Agreement entered into between the District Council and SAL which Agreement adopts and incorporates Master Agreements between the District Council and various employer associations, and also binds SAL to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit A).

11. The District Council and Sanco have been parties to a collective bargaining agreement which became effective August 20, 2018 ("Sanco Agreement" or collectively with SAL Agreement as "Agreements"). (A copy of the Independent Construction Industry Collective Bargaining Agreement entered into between the District Council and Sanco which Agreement adopts and incorporates Master Agreements between the District Council and various employer associations, and also binds Sanco to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit B).

12. The Funds have been duly authorized to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees. Further, the Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

## COUNT I

### (Failure to Submit to an Audit)

For a cause of action by Plaintiffs Funds against Defendant S.A.L. Express, Inc., also d/b/a/ S.A.L. Traffic Control:

13. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

14. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

15. The Agreement and the Funds' respective Agreements and Declarations of Trust require SAL to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

16. Under the terms of the Agreement SAL is required to obtain and maintain a surety bond to ensure payment of wages and fringe benefit contributions.

17. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, SAL has failed to submit its books and records to a requested audit for the period of March 30, 2018 forward, thereby depriving the Funds of information and income necessary to administer the Fund;

18. SAL's actions in failing to submit to the audit violate Section 515 of ERISA, 29 U.S.C. §1145 and Section 301 of the LMRA.

19. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, the terms of the Agreement and the Funds' respective Trust Agreements, SAL is liable to the Funds for delinquent contributions, liquidated damages, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant S.A.L. Express, Inc., also d/b/a/ S.A.L. Traffic Control:

  a.  ordering SAL to submit its books and records to and audit for the period of March 30, 2018 forward;

  b.  entering judgment in sum certain in favor of the Funds and against SAL on the amounts due and owing the audit for the period of March 30, 2018 forward including contributions, interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

  c.  awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure to Submit to Dues Audit)

For a cause of action by Plaintiffs Funds against Defendant S.A.L. Express, Inc., also d/b/a/ S.A.L. Traffic Control:

  20.  Plaintiffs reallege paragraphs 1 through 19 as though fully set forth herein.

  21.  Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the District Council in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

  22.  Notwithstanding the obligations imposed by the Agreements, SAL has failed to submit its books and records to a requested audit for the period of March 30, 2018 forward depriving the Union of information necessary to confirm that SAL has withheld and submitted payment of union dues that were or should have been withheld from the wages of employees during the audit period.

23. Pursuant to the Agreements, SAL owes liquidated damages on all unpaid dues.

24. Pursuant to the Agreement, SAL is liable to the Funds for any unpaid union dues revealed by the audit as well as liquidated damages, audit costs, reasonable attorneys' fees and costs as the District Council's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant S.A.L. Express, Inc., also d/b/a/ S.A.L. Traffic Control:

a. ordering SAL to submit to submit an audit for the period of March 30, 2018 forward;

b. entering judgment in sum certain in favor of the Funds and against SAL on the amounts due and owing pursuant to the audit for the March 30, 2018 forward including dues, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Failure to Submit to an Audit)

For a cause of action by Plaintiffs Funds against Defendant Sanco Services, Inc. also d/b/a Sanco Traffic Control:

25. Plaintiffs reallege paragraphs 1 through 24 as though fully set forth herein.

26. Defendant Sanco Services, Inc. also d/b/a Sanco Traffic Control (hereinafter "Sanco") is an Illinois corporation. At times relevant Sanco did business within this District and was at times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

27. The District Council and Sanco are parties to a collective bargaining agreement which became effective August 20, 2018 ("Agreement"). (A copy of the Independent Construction Industry Collective Bargaining Agreement entered into between the District Council and Sanco which Agreements adopt and incorporate Master Agreements between the District Council and various employer associations, and also binds Sanco to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit B).

28. Notwithstanding the obligations imposed by the Agreements and the Funds' respective Agreements and Declarations of Trust, Sanco has failed to submit its complete books and records to a requested audit for the period of August 20, 2018 forward thereby depriving the Funds of information necessary to administer the Funds.

29. The Company's actions in failing to submit payment upon an audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

30. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, the terms of the Agreements and the Funds' respective Trust Agreements, the Company is liable to the Funds for delinquent contributions, liquidated damages, interest, audit costs, attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Sanco Services, Inc. also d/b/a Sanco Traffic Control:

a. ordering Sanco to submit its complete books and records to an audit for the period of August 20, 2018 forward;

b. entering judgment in sum certain in favor of the Funds and against the Company on the amounts due and owing pursuant to the audit for the period of August 20, 2018 forward including any unpaid contributions, interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

    c.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT IV

### (Failure to Submit an Audit)

For a cause of action by Plaintiffs Funds against Defendant Sanco Services, Inc. also d/b/a Sanco Traffic Control:

31.    Plaintiffs reallege paragraphs 1 through 30 as though fully set forth herein.

32.    Notwithstanding the obligations imposed by the Agreements, Sanco has failed to submit its complete books and records to an audit for the period of August 20, 2018 forward thereby depriving the Union of information necessary to administer dues collections.

33.    Pursuant to the Agreement, the Company is liable to the Funds for any unpaid union dues revealed by the audit as well as liquidated damages, audit costs, reasonable attorneys' fees and costs as the District Council's collection agent, and such other legal and equitable relief as the Court deems appropriate

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Sanco Services, Inc. also d/b/a Sanco Traffic Control:

    a.    ordering Sanco to submit its complete books and records to an audit for the period of August 20, 2018 forward;

    b.    entering judgment in sum certain in favor of the Funds and against Sanco on the amounts due and owing pursuant to the audit for the period of August 20, 2018 forward including union dues, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

    c.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT V

(Alter Ego)

For a cause of action by Plaintiffs Funds against Defendants S.A.L. Express, Inc., also d/b/a/ S.A.L. Traffic Control, Sanco Services, Inc. also d/b/a Sanco Traffic Control, Sammy's Staffing Inc., also d/b/a Sammy's Trucking & Materials Inc., Osvaldo Pico and Samuel Pico:

34. Plaintiffs reallege paragraphs 1 through 33 as though fully set forth herein.

35. Defendants SAL and Sanco paid employees performing work defined as covered under the terms of the Agreement with the Union through Sammy's Staffing Inc., also d/b/a Sammy's Trucking & Materials Inc. ("Sammy's") and the personal bank accounts of Osvaldo Pico and Samuel Pico to avoid paying and reporting the appropriate wages and benefit contributions required to be paid under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust.

36. Employees who had previously worked for SAL began working for Sanco without any break in service and without formally applying to work at Sanco.

37. SAL and Sanco perform the same type of work, primarily barricade erection, flagging and traffic safety work, for the same clients, including Traffic Control & Protection, Inc.

38. SAL and Sanco operated from the same facility, the yard of Traffic Control & Protection, Inc.

39. Employees working for SAL and Sanco used the same equipment, performed the same type of work, and reported to the same managing employees including Osvaldo Pico and Samuel Pico.

40. Sanco was created in relevant part to avoid the debts of SAL, including the debt for its outstanding Union obligations to pay benefit contributions and wages.

41. Employees who performed work defined under the terms of the Agreement between SAL and Sanco were paid through Sammy's and the personal accounts of Osvaldo Pico and Samuel Pico including, but not limited to, Lemuel Alvarez Mendez and Sabas Balladeras, in

relevant part to avoid payment of appropriate wages and benefit contributions required under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust.

42. Employees performing covered work for SAL and Sanco were paid through Sammy's and the personal accounts of Osvaldo and Samuel Pico for the financial benefit of Defendants SAL, Sanco, Sammy's, Osvaldo Pico and Samuel Pico.

43. Sal, Sanco, Sammy's, Osvaldo Pico and Samuel Pico are alter egos of each other and should be held jointly and severally liable for the benefit contributions and dues owed by SAL and Sanco.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants S.A.L. Express, Inc., also d/b/a/ S.A.L. Traffic Control, Sanco Services, Inc. also d/b/a Sanco Traffic Control, Sammy's Staffing Inc., also d/b/a Sammy's Trucking & Materials Inc., Osvaldo Pico and Samuel Pico:

a. ordering the Defendants to submit their books and records to an audit for the period of March 30, 2018 forward;

b. entering judgment in sum certain in favor of the Funds and against Defendants SAL, Sanco, Sammy's, Osvaldo Pico and Samuel Pico jointly and severally on the amounts due and owing pursuant to the audit for the period of March 30, 2018 forward including all unpaid benefit contributions, dues, interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT VI

**(Single Employer)**

For a cause of action by Plaintiffs Funds against Defendants S.A.L. Express, Inc., also d/b/a/ S.A.L. Traffic Control, Sanco Services, Inc. also d/b/a Sanco Traffic Control, Sammy's Staffing Inc., also d/b/a Sammy's Trucking & Materials Inc., Osvaldo Pico and Samuel Pico:

44. Plaintiffs reallege paragraphs 1 through 43.

45. SAL, Sanco, Sammy's, Osvaldo Pico, and Samuel Pico's operations were interrelated in that all Defendants performed the same type of work, *e.g.* barricade erection, flagging and traffic safety work, operated from the same principal place of business, utilized the same equipment, used the same employees, and performed work for the same client, Traffic Control & Protection, Inc.

46. Osvaldo Pico and Samuel Pico managed the day-to-day operations of SAL, Sanco and Sammy's including the hiring, firing and direction of Defendants' labor force.

47. Defendants SAL, Sanco, Sammy's, Osvaldo Pico and Samuel Pico's operations are so interrelated that they should be treated as a "single employer" and held jointly and severally liable for the benefit and dues obligations of each other.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants S.A.L. Express, Inc., also d/b/a/ S.A.L. Traffic Control, Sanco Services, Inc. also d/b/a Sanco Traffic Control, Sammy's Staffing Inc., also d/b/a Sammy's Trucking & Materials Inc., Osvaldo Pico and Samuel Pico:

a. ordering the Defendants to submit their books and records to an audit for the period of March 30, 2018 forward;

b. entering judgment in sum certain in favor of the Funds and against Defendants SAL, Sanco, Sammy's, Osvaldo Pico and Samuel Pico jointly and severally on the amounts due and owing pursuant to the audit for the period of March 30, 2018 forward including all unpaid benefit contributions, dues, interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

c.   awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT VII

### (Fraud)

For a cause of action by Plaintiffs against Defendants Robert Sanches, Osvaldo Pico and Samuel Pico:

48.   Plaintiffs reallege paragraphs 1 through 47.

49.   Defendants Robert Sanches, Osvaldo Pico and Samuel Pico, as the managing officers and/or individuals of SAL, Sanco and/or Sammy's, had the ability to control and direct the employment and reporting obligations of individuals performing work defined as covered under the terms of the Agreements between the SAL, Sanco and the District Council.

50.   At times relevant herein, Robert Sanches, Osvaldo Pico and Samuel Pico had knowledge that individuals performing work defined as covered under the terms of the collective bargaining agreement between the Company and the District Council were not being paid the appropriate wages and were not having the appropriate benefit contributions reported and submitted on their behalf by the Company to the Funds and the District Council.

51.   Specifically, employees and/or subcontractors of SAL and Sanco, including, but not limited to, Lemuel Alvarez Mendez and Sabas Balladeras, were intentionally and with the knowledge of Defendants Robert Sanches, Osvaldo Pico and/or Samuel Pico, paid in cash, paid through Sammy's, paid through the personal accounts of Osvaldo Pico and Samuel Pico at rates of $25.00 per hour, were paid through South East Employee Leasing Services, a third-party payroll company not disclosed to the Funds or the Union, and paid through payroll accounts of Sanco at an alleged rate of $50.00 per hour when, in fact, the actual rate was $25.00 per hour and the payroll did not accurately reflect the actual number of hours worked by the employees. As a result, Defendants Robert Sanches, Osvaldo Pico and/or Samuel Pico systematically submitted or

14

caused to be submitted inaccurate and under-reported hours on benefit and dues reports and maintained or caused and directed the Company to maintain false payroll information with the intent of under-reporting and not paying the appropriate wages, dues and benefit contributions due under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust.

52. Sanco, under the direction and control of Defendants Robert Sanches, Osvaldo Pico and Samuel Pico, intentionally submitted inaccurate benefit and dues reports from the period of August 2018 forward understating the number of hours worked by individuals who performed covered-work for the Company and underreporting the amount of money the individuals made or should have made during each monthly reporting-period.

53. Defendants Robert Sanches, Osvaldo Pico and Samuel Pico knowingly submitted or caused to be submitted false benefit and corresponding dues reports on behalf of Sanco to the Funds and the District Council.

54. The Funds and the District Council relied to their detriment on the false reports submitted by Sanco. Specifically, if the District Council had been aware that Sanco had failed to pay and report the proper wages, dues and benefit contributions for work performed on Sanco's projects, the District Council would have taken all lawful steps permitted under the Agreements including, but not limited to, taking job actions against the Company and filing the appropriate lawsuit. If the Funds had been aware that the Sanco had failed to pay and report the proper wages, dues and benefit contributions, the Funds would have been precluded from crediting hours for the incomplete reports submitted by Sanco at the direction of the Defendants and would have commenced the appropriate lawsuit at an earlier date. Thus, by submitting or causing to be submitted false reports, Defendants Robert Sanches, Osvaldo Pico and Samuel Pico has enabled the Company to continue to operate resulting in a benefit to the Defendants and increasing the liabilities owed by the Defendants to the Funds and the District Council.

55. The Funds, the District Council and the plan participants have suffered harm as a direct result of the false benefit and dues reports submitted by the Defendants. Specifically, the Funds and the District Council have incurred unpaid benefit contributions, dues, interest, liquidated damages, audit costs, and attorneys' fees and expenses. The Funds have also provided benefit coverage to individuals based on the submission of the incomplete and false reports. Said coverage would not have been provided had the Funds been aware that the reports were false and incomplete. As a result of the systematic under-reporting, individuals may have received eligibility based on less hours than actually worked, future welfare contribution rates may be impacted, the Pension Fund may be required to provide benefits to participants for which no contributions have been received, and in the event that the Funds are unable to obtain full recovery of all amounts due from the Defendants, the Funds may become under-funded.

56. Defendants Robert Sanches, Osvaldo Pico and Samuel Pico personally benefited from the submission of false reports submitted by the Sanco to the Funds and the District Council enabling the Company to continue operations and obtain financial gain including the payment of wages and dividends to Defendants Robert Sanches, Osvaldo Pico and Samuel Pico as a result of the continued operation of Sanco. Thus, Defendants Robert Sanches, Osvaldo Pico and Samuel Pico obtained a direct financial gain as a result of the submission of false benefit and dues reports to the Funds and the District Council.

57. Defendants Robert Sanches, Osvaldo Pico and Samuel Pico are personally liable for any unpaid benefit contributions, dues, interest, liquidated damages, audit costs, and wages owed by the Company to the Funds and the District Council and should be found jointly and severally liable for all amounts revealed as due and owing pursuant to the Counts I through VI of Plaintiffs' Complaint.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of the Funds and against Defendants Robert Sanches, Osvaldo Pico and Samuel Pico jointly and

severally for all amounts due to the Funds and the District Council as sought in Counts I through VI, the costs of any additional damages sustained by the Funds and the District Council as a result of the fraudulent misrepresentations, and any other legal and equitable relief as the Court deems just and appropriate.

October 8, 2019

Respectfully submitted,

Laborers' Pension Fund, et al.

By: /s/ Patrick T. Wallace

Office of Fund Counsel
111 West Jackson Boulevard
Suite 1415
Chicago, Illinois 60604
(312) 692-1540

17

Apr. 19. 2018 1:40PM     LABORERS UNION 582                          No. 1763   P. 1/1



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
• 999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8833

### INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **S.A.L. Traffic Controls** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 76, 78, 152, 225, 269, 581, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

[Body of agreement — multiple numbered paragraphs, illegible small print]

1. Recognition...
2. Labor Contract...
3. Total Economic Increases...
4. Checkoff Deductions and Remittances...
5. [Political League deduction paragraph]
6. Work Jurisdiction...
7. Subcontracting...
8. Fringe Benefits...
9. Contract Enforcement...
10. Successorship...
11. Termination...
12. Execution...

Dated: **March 30**, 20**19**

ACCEPTED:
Laborers' Local Union #: **582**

By: _[signature]_
CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _[signature]_
 James P. Connolly, Business Manager

By: _[signature]_
 Charles LoVerde, Secretary-Treasurer

For Office Use Only: _____

**SAL Traffic Control**
(Employer)

FEIN No.: _____

By: **Brandon Francis** **Chief Operations Officer**
(Print Name and Title)

_[signature]_
(Signature)

**6850 W 63rd Street**
(Address)

**Chicago, IL 60638**
(City, State and Zip Code)

**708-491-7352**
(Telephone/Fax No.)

**Brandon@Saltraffic.com**
(Email Address)

Effective June 1, 2017    WHITE - LOCAL UNION  •  CANARY - TRUST FUND  •  PINK - DISTRICT COUNCIL  •  GOLD - EMPLOYER

**EXHIBIT A**



## CONSTRUCTION & GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

### INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **SANCO SERVICES INC** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 68, 75, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Great Lakes Contractors Association, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.17 per hour effective June 1, 2017; $2.24 per hour effective June 1, 2018; $2.31 per hour effective June 1, 2019; and $2.39 per hour effective June 1, 2020; said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2017, the minimum wage rate shall be $41.20 per hour.

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorization forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the tenth (10th) day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDCLMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2017 (unless dated differently below) through May 31, 2021, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice, the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

Dated: **AUGUST 20**, 20**18**

ACCEPTED:
Laborers' Local Union No. **76**

By: _(signature)_

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _(signature)_
James P. Connolly, Business Manager

By: _(signature)_
Charles LoVerde, Secretary-Treasurer

For Office Use Only: **IM - IRBA**

RECEIVED AUG 21 2018

**SANCO Services Inc** (Employer)

FEIN No.:

By: **Robert Sanchez Pres** (Print Name and Title)
_(Signature)_
**200 Yankee Rd** (Address)
**Rockford IL 61104** (City, State and Zip Code)
**815-961-0365** (Telephone/Fax)
**bob.sanchez@sancotraffic.com** (Email Address)

EXHIBIT B

Effective June 1, 2017    WHITE - LOCAL UNION    •    CANARY - TRUST FUND    •    PINK - DISTRICT COUNCIL    •    GOLD - EMPLOYER